**PERSONALLY SERVED**

STATE OF MINNESOTA

COUNTY OF HENNEPIN

FILED
MINNEAPOLIS, MINN
2018 DEC 26 PM 1:07
CITY CLERK
DEPARTMENT

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

---

Clifford L. Johnson,

    Plaintiff,

vs.

City of Minneapolis; and Officer Kevin Franek and Officer Brian Cummings, in their individual and official capacities,

    Defendants.

**SUMMONS**

Court File No:

Case Type: Other

Judge:

---

**THIS SUMMONS IS DIRECTED TO: City of Minneapolis and Mayor Jacob Frey; and Officer Kevin Franek and Officer Brian Cummings.**

**1. YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

**2. YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    The Law Office of Zorislav R. Leyderman
    222 South 9th Street, Suite 1600
    Minneapolis, MN 55402

**3. YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiffs everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to

1

respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

                                              THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: <u>December 26, 2018</u>       By: <u>s/ Zorislav R. Leyderman</u>
                                                  ZORISLAV R. LEYDERMAN
                                                  Attorney License No. 0391286
                                                  Attorney for Plaintiff
                                                  The Law Office of Zorislav R. Leyderman
                                                  222 South 9th Street, Suite 1600
                                                  Minneapolis, MN 55402
                                                  Tel: (612) 876-6626
                                                  Email: zrl@ZRLlaw.com

| | | |
|---|---|---|
| **STATE OF MINNESOTA** | | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | | **FOURTH JUDICIAL DISTRICT** |

Clifford L. Johnson,

    Plaintiff,

vs.

City of Minneapolis; and Officer Kevin Franek and Officer Brian Cummings, in their individual and official capacities,

    Defendants.

**COMPLAINT WITH JURY DEMAND**

Court File No:

Case Type: Other

Judge:

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth Amendment to the United States Constitution, and pursuant to Minnesota state law, against the City of Minneapolis and Officers Franek and Cummings, in their individual and official capacities.

2. It is alleged that the Defendants made an unreasonable seizure of Plaintiff's person, violating his rights under the Fourth Amendment to the United States Constitution. It is also alleged that Defendants battered Plaintiff under Minnesota state law.

## VENUE

3. Venue is proper in this Court pursuant to Minn. Stat. §§ 542.03 and 532.09, in that this cause of action arose in Hennepin County, MN.

1

## PARTIES

4. Plaintiff Clifford Johnson was at all material times a resident of the State of Minnesota and of full age.

5. The City of Minneapolis, Minnesota, is a municipal corporation and the public employer of Defendant Officers Franek and Cummings.

6. Defendant Police Officers Franek and Cummings were at all times relevant to this complaint duly appointed and acting officers of the police department of the City of Minneapolis, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or the City of Minneapolis.

## FACTS

7. On the evening of August 27, 2017, Plaintiff Clifford Johnson was spending time at his house, on private residential property in South Minneapolis. Mr. Johnson suffers from mental illness and is diagnosed with bipolar disorder as well as other mental health conditions.

8. Mr. Johnson noticed some commotion outside involving his next-door neighbors and Minneapolis/Hennepin County emergency responders. Mr. Johnson exited his residence to observe what was going on outside.

9. Defendant Officers Franek and Cummings arrived to the area and spoke with Mr. Johnson's neighbor, where it was reported that Mr. Johnson was mentally ill, was having a mental health episode, and was recently yelling in the street. At this time, Defendant Officers Franek and Cummings did not observe Mr. Johnson yelling or engaging in any suspicious or unlawful activities. The Defendant Officers were a short distance away from Mr. Johnson for

approximately 2 minutes, during which time Mr. Johnson was completely calm and quiet and causing no disturbance whatsoever.

10. Officer Franek and Cummings then proceeded to Mr. Johnson's residence. They located Mr. Johnson sitting on the front steps of his house. Mr. Johnson was completely calm and was quietly sitting on his steps. At this time, the Defendant Officers knew that Mr. Johnson was mentally ill and possibly in the middle of a mental health crisis/episode.

11. The Defendant Officers entered Mr. Johnson's property without consent, approached Mr. Johnson from a close distance, and illuminated him using a high-powered flashlight. Mr. Johnson was shirtless, shoeless, and wearing only pajama pants rolled up above his knees. Mr. Johnson's hands were clearly visible and empty. The Officers observed that Mr. Johnson had no weapons on him or near him. The door to Mr. Johnson's residence was closed. An open beer can was visible and positioned approximately one foot away from Mr. Johnson's foot.

12. The Defendant Officers initiated contact with Mr. Johnson and accused him of yelling. Despite his mental illness, Mr. Johnson initially remained calm and in a sitting position. Mr. Johnson attempted to explain the situation to the Defendant Officers, although he struggled due to his mental illness. Mr. Johnson spoke with the Defendant Officers calmly and answered their questions for more than a minute.

13. Approximately 6 weeks prior, Justice Ruszczyk was unjustifiably shot and killed outside her South Minneapolis residence by a Minneapolis Police Officer. Mr. Johnson became concerned that he would be shot and killed by the Defendant Officers. Mr. Johnson got up, walked a short distance onto his lawn, and expressed his concerns about being shot and killed to the Defendant Officers. The Offers then instructed Mr. Johnson to sit back down; Mr.

3

Johnson immediately followed their directive, returned to the steps, and resumed a sitting position.

14. At this point, it became clear that Mr. Johnson's mental state was starting to escalate as a direct result of the Defendant Officers' presence on his property. The Defendant Officers could have deescalated the situation by retrieving to the street and maintaining observation over Mr. Johnson. As noted above, the Defendant Officers found Mr. Johnson on his property (which they knew from prior conversation with the neighbor) and completely calm and cooperative. The Defendant Officers failed to retrieve and instead remained on the property.

15. Once back in a sitting position, Mr. Johnson expressed that he was worried that the Officers had turned off their body-worn cameras. Mr. Johnson's concern once again stemmed from the shooting of Ms. Ruszczyk, which was not recorded because the officers involved in that case failed to activate their body-worn cameras prior to the shooting. Mr. Johnson remained in the sitting position and attempted to continue speaking with the Officers. Mr. Johnson once again reiterated that he was not yelling or causing any disturbance when the officers arrived, suggesting that he wanted to be left alone.

16. Due to the Officers' continued presence on his property, the flashing emergency lights, the recent police shooting, and Mr. Johnson's mental illness, Mr. Johnson's mental state continued to escalate and he started exhibiting verbal outbursts of yelling. However, Mr. Johnson did not engage in any physical threats or aggression towards the Officers.

17. At one point, Mr. Johnson got up once more and, while remaining near his house, started yelling at someone who was in or across the street. This behavior was clearly not directed at the Officers. At the same time, Defendant Officer Franek removed his taser and aimed it at

Mr. Johnson using the laser beams. Mr. Johnson was once again directed to sit down, and he immediately followed the directive and returned to a sitting position on his steps. Mr. Johnson once again expressed his fear of being shot.

18. Mr. Johnson then got up and engaged in another outburst of yelling. Mr. Johnson did not approach the Officers but yelled loudly about the shooting of Ms. Ruszczyk, the commotion he observed prior to the Defendant Officers' arrival, and his feeling of being harassed by the Officers without justification. Mr. Johnson continued to express his fear of being shot by the Officers. Mr. Johnson was once again directed to sit down, and he followed that directive and returned to a sitting position on his steps.

19. By this point, the Defendant Officers had interacted with Mr. Johnson for more than three minutes. Besides ordering Mr. Johnson to sit down, which he followed each time, the Defendant Officers did not give Mr. Johnson any other directives, nor did they provide any explanation as to what they planned to do with him. The Officers did not advise Mr. Johnson of their intent to offer him medical assistance for his mental health condition. The Defendant Officers' failure to explain what was about to happen only fueled Mr. Johnson's fear of being shot and escalated his state emotional distress.

20. Despite the above, Mr. Johnson voluntarily sat back down on his steps, stopped yelling, calmed himself down, and picked up his beer and took a sip. Mr. Johnson explained that his mouth was dry and that he was thirsty. At this point, the Defendant Officers still failed to advise Mr. Johnson of their plans. Instead, even though just moments prior he was directing Mr. Johnson to sit down, Officer Franek now directed Mr. Johnson to stand up.

21. At this point, Mr. Johnson's mental state was clearly starting to deescalate and stabilize. He remained seated and stopped yelling. He explained to the Officers that he needed some time

to catch his breath and continue to stabilize. He also told the Officers that he was thirsty due to side-effects of his medications. Officer Franek now directed Mr. Johnson to put his hands behind his back. The Defendant Officers did not tell Mr. Johnson that he was being detained for medical reasons and that he was not being arrested. Mr. Johnson explained that he was under the influence of an adrenaline rush and unable to comply and asked to take another sip of his beer and have some additional time to stabilize himself.

22. Although Mr. Johnson was now sitting down and calmly asking to have some additional time to stabilize himself, Officer Franek deployed his taser without a verbal warning, striking Mr. Johnson in his chest/torso area and causing Mr. Johnson to suffer electric shock and severe and excruciating pain. Mr. Johnson fell forward and was then handcuffed without incident and ultimately transported to HCMC by an ambulance.

23. At the time of the tasing, Mr. Johnson's emotional state was continuing to voluntarily deescalate – he was sitting down, he was no longer yelling, and he was not engaged in any threatening or aggressive behavior towards the Officers or anyone else. He was verbally responding and acknowledging Officer Franek's directives and actively requesting an accommodation for additional time to stabilize himself and get out of his adrenaline rush.

24. Officer Franek's tasing of Mr. Johnson was excessive, unnecessary, unjustified, and in violation of Minneapolis Police Department's Policy and Procedure Manual. Pursuant to their department's de-escalation policy (5-304), the Defendant Officers were required to deescalate the situation by attempting to "stabilize the situation so that more time, options and resources are available." Defendants were also required to consider whether "[m]edical conditions," "[m]ental impairment," or "[b]ehavioral crisis," as opposed to deliberate resistance, was resulting in lack of compliance. The Defendant Officers knew that Mr.

Johnson was suffering a mental health episode that was interfering with his ability to immediately follow directives. The Defendant Officers also knew that Mr. Johnson was making a reasonable request for accommodations related to his mental health disability. The Defendant Officers' denial of Mr. Johnson's request for accommodation and their tasing of Mr. Johnson violated Policy 5-304.

25. In addition, pursuant to Policy 5-314, the Defendant Officers were prohibited from tasing subjects exhibiting "passive resistance" and only permitted to tase subjects exhibiting "active resistance" or "active aggression," as defined by policy. At the time he was tased, Mr. Johnson was not exhibiting "active aggression" or "active resistance" and, at best, exhibited "passive resistance." During their short encounter, Mr. Johnson was directed to sit down several times, and he followed that directive each time. Mr. Johnson was also directed to calm down, and he followed that directive as well by calming himself down within several minutes. The Defendant Officers' tasing of Mr. Johnson violated Policy 5-314.

26. The Defendant Officers interacted with Mr. Johnson for only approximately 4.5 minutes total prior to tasing Mr. Johnson. Mr. Johnson remained completely calm and in a seated position during the first 1.25 minutes of the encounter as well as the last 1.25 minutes of the encounter. For the intermediate 2 minutes of the encounter, although Mr. Johnson would get up and engage in yelling outbursts, he never threatened the Officers and he followed the Officers' directives to sit down and calm down. Approximately 3 minutes into the incident, Mr. Johnson voluntarily sat down, voluntarily calmed himself down, and requested a reasonable accommodation for additional time to stabilize himself. If Mr. Johnson's request for accommodation had been granted, Mr. Johnson would have voluntarily submitted himself into police custody within a short period of time without the need to use any physical force.

27. As a result of the Defendants' use of the taser, Mr. Johnson suffered severe physical pain and discomfort. In addition, the use of the taser caused Mr. Johnson to suffer a severe mental breakdown, which required hospitalization for approximately 10 days and then a prolonged period of outpatient treatment and recovery. Mr. Johnson's emotional trauma is ongoing as he no longer feels safe in his own home and suffers stress, fear, and paranoia related to and arising out of the tasing incident. As a result of the Defendants' actions, Mr. Johnson required medical treatment and has incurred medical expenses.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND EXCESSIVE FORCE AGAINST OFFICERS FRANEK AND CUMMINGS

28. Paragraphs 1 through 27 are incorporated herein by reference as though fully set forth.

29. Based on the above factual allegations, the Defendant Officers, through their actions, acting under the color of state law, violated Plaintiff's constitutional right to remain free from unreasonable seizures and use of excessive force under the Fourth Amendment to the United States Constitution when Officer Franek tased Mr. Johnson without justification and when Officer Cummings failed to protect Mr. Johnson from Officer Franek's excessive use of force.

30. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 2: 42 U.S.C. § 12132 – ADA PUBLIC SERVICES DISCRIMINATION AGAINST CITY OF MINNEAPOLIS

31. Paragraphs 1 through 27 are incorporated herein by reference as though fully set forth.

32. Based on the above factual allegations, Defendant City of Minneapolis unlawfully discriminated against Plaintiff on the basis of his disability, denied Plaintiff equal access to

its services on the basis of his disability, and failed to make reasonable accommodations for Plaintiff, all in violation of the ADA.

33. As a result of these violations, Plaintiff suffered damages as aforesaid.

### COUNT 3: BATTERY AGAINST OFFICER FRANEK AND CITY OF MINNEAPOLIS UNDER MINNESOTA STATE LAW

34. Paragraphs 1 through 27 are incorporated herein by reference as though fully set forth.

35. Based on the above factual allegations, the Defendants battered Plaintiff. Specifically, Officer Franek engaged in intentional, offensive, and unpermitted contact with Plaintiff when he tased Plaintiff without justification and without a verbal warning.

36. Officer Franek's tasing of Plaintiff violated Minneapolis Police Department's Policy and Procedure Manual Use of Force Policy. Officer Franek's tasing of Plaintiff without a verbal warning also violated Minneapolis Police Department's Policy and Procedure Manual Use of Force Policy.

37. Defendant City of Minneapolis is vicariously liable to Plaintiff for Defendant Officer Franek's battery.

38. As a direct and proximate result of this battery, Plaintiff suffered damages as aforesaid.

### COUNT 4: NEGLIGENCE AGAINST ALL DEFENDANTS UNDER MINNESOTA STATE LAW

39. Paragraphs 1 through 27 are incorporated herein by reference as though fully set forth.

40. Based on the above factual allegations, the Defendants acted negligently in their failure to use required de-escalation techniques, in their failure to allow Plaintiff additional time to stabilize himself prior to resorting to use of force, and in their failure to follow the City's Use of Force Policy (Policy 5-300).

41. Defendant City of Minneapolis is vicariously liable to Plaintiff for the Defendant Officers' negligence.

42. As a direct and proximate result of this negligence, Plaintiff suffered damages as aforesaid.

## RELIEF REQUESTED

**WHEREFORE, Plaintiff requests that this Court grant the following relief:**

a. Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's federally protected constitutional and statutory rights as well as Plaintiff's common law rights under Minnesota state law;

b. Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

c. Award of punitive damages to Plaintiff as to Count 1 above, pursuant to *Smith v. Wade*, 461 U.S. 30 (1983);

d. Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205;

e. Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL**

THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: December 26, 2018       By: s/ Zorislav R. Leyderman
ZORISLAV R. LEYDERMAN
Attorney License No. 0391286
Attorney for Plaintiff
The Law Office of Zorislav R. Leyderman
222 South 9th Street, Suite 1600
Minneapolis, MN 55402
Tel: (612) 876-6626
Email: zrl@ZRLlaw.com